**DELAWARE HEALTH CARE, INC.,
a corporation of the State of
Delaware, Plaintiff,**

**v.**

**MCD HOLDING COMPANY, a corporation of the State of Delaware d/b/a Infusion Services and d/b/a Infusion Services of Delaware, and MCD Foundation, a corporation of the State of Delaware and its subsidiaries: The Medical Center of Delaware, Inc., a corporation of the State of Delaware, a/k/a (1) Christiana Hospital, (2) Wilmington Hospital d/b/a First State Health Plan, Genesis Health Network, Genesis Integrated Health Care Services, Mid–Atlantic Integrated Health Care Services, Mid–Atlantic**

Health Net, Champion Health Services, Cornerstone Healthcare, Eastern Integrated Health Care Service, and Visiting Nurse Association of Delaware, a corporation of the State of Delaware, Defendants.

Civ. A. No. 94–406 MMS.

United States District Court,
D. Delaware.

June 30, 1995.

Christopher J. Curtin of Sawyer & Akin, P.A., Wilmington, DE; of counsel: Rocco P. Imperatrice, III of Imperatrice & Amarant, Newtown Square, PA; for plaintiff.

Stephen E. Herrmann of Richards, Layton & Finger, Wilmington, DE; of counsel: Brian M. Peters, Kathleen M. Chandler and Mark L. Mattioli of Post & Schell, P.C., Philadelphia, PA; for defendants.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

## I. INTRODUCTION

Plaintiff Delaware Health Care, Inc. ("Delaware Health") has filed this action alleging that MCD Holding Company ("MCD Holding"), MCD Foundation ("MCD Foundation") and its subsidiaries, The Medical Center of Delaware, Inc. ("Medical Center") and Visiting Nurse Association of Delaware ("VNA"), have violated the Sherman Act, 15 U.S.C. §§ 1 and 2, the Clayton Act, 15 U.S.C. § 18, and state law for tortious interference with contractual and prospective contractual relations. In response, defendants have filed a motion to either dismiss plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, to strike a portion of the complaint under Fed.R.Civ.P. 12(f). This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337 and 1367. For the reasons stated below, the Court will deny defendants' motion to dismiss and grant in part the motion to strike.

## II. FACTUAL BACKGROUND

Delaware Health is a home health care agency that delivers infusion and other health services to patients in the home. Complaint, Docket Item ("D.I.") 1 at ¶¶ 8, 20.

Defendant Medical Center is a wholly-owned subsidiary of defendant MCD Foundation. *Id.* at ¶¶ 20–21. The Medical Center has two major hospital divisions: Wilmington Hospital, a 210 bed acute care facility located in Wilmington, Delaware, and Christiana Hospital, a 730 bed acute care hospital in nearby Newark, Delaware. In addition, various health networks, health plans, and health services do business under the aegis of the Medical Center. *Id.* at ¶ 11. Defendant VNA, a provider of home health care services, is also a wholly-owned subsidiary of MCD Foundation. *Id.* at ¶ 12. Defendant MCD Holding, whose corporate relationship to the other defendants, if any, is undefined by the complaint, provides infusion therapy to patients in the home.[1] *Id.* at ¶ 9.

As a home health care agency, plaintiff offers a spectrum of health services encompassing the provision of skilled nursing care, various therapies, health aide services, injectable pharmaceutical and nutritional products, and medical equipment to patients in the home. *Id.* at ¶ 20. Consumers of home health care services are primarily patients who are discharged from hospitals in need of follow-up care. *Id.* at ¶ 21. According to the complaint, hospitals are the main source of referrals for home health care business and enjoy "absolute market power relative to the home health care business." *Id.* at ¶¶ 22–24. In addition, physicians, who are the second largest source of home health care referrals, "are generally coerced by their affiliated hospitals to support the home care agencies in which the hospitals have an economic interest." *Id.* at ¶ 22.

Plaintiff also alleges that changes in health care reimbursement practices have resulted in reduction of the average length of stay for hospital patients, thus causing hospitals to seek revenues in new and diverse business ventures such as home health care. *Id.* at ¶¶ 26–27. The complaint states that expansion of hospital services into the home health market, a market that hospitals directly control, is fraught with potential for antitrust abuse. *Id.* at ¶ 28. In that same vein, Delaware Health alleges that the defendants stifled competition by hatching an ambitious home health care business plan to reap economic gain from the market power they enjoy in the home health industry in the New Castle County, Delaware area. *Id.* at ¶ 33. Plaintiff claims injury as a direct result of defendants' alleged illegal activities, *id.* at ¶ 52, and prays for monetary and injunctive relief. *Id.* at p. 18.

## III. DISCUSSION

### A. Standard for Motion to Dismiss under Rule 12(b)(6)

The purpose of a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 at 294 (2d ed. 1990). When considering a motion to dismiss, the Court should read the complaint generously, accept all of the allegations contained therein as true, and construe them in a light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). The Court will dismiss the complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994).

■ The Federal Rules of Civil Procedure require plaintiff to present a short and plain statement of its claim showing that it is entitled to relief. Fed.R.Civ.P. 8. This rule applies with equal force in antitrust cases.

---

1. In their brief accompanying the motion to dismiss, defendants declared that MCD Holding is another wholly-owned subsidiary of MCD Foundation. D.I. 16 at 3. Facts such as these, raised by counsel for the first time in a legal memorandum, are not properly considered by the Court when deciding a Rule 12(b)(6) motion. *MCI Telecommunications Corp. v. Graphnet, Inc.,* 881

F.Supp. 126, 129 (D.N.J.1995). The Court must limit its consideration to the facts alleged in the complaint, *Biesenbach v. Guenther,* 588 F.2d 400, 402 (3d Cir.1978), and accept plaintiff's well-pleaded facts as true. *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir. 1994).

*See* 2A J. Moore, *Moore's Federal Practice* § 8.17[4] n. 16 (1982); *accord Knuth v. Erie– Crawford Dairy Coop. Ass'n,* 395 F.2d 420 (3d Cir.), *cert. denied,* 410 U.S. 913, 93 S.Ct. 966, 35 L.Ed.2d 278 (1968); *see also Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.,* 711 F.2d 989, 995 (7th Cir.1983); *Seasongood v. K & K Ins. Agency,* 548 F.2d 729, 733 (8th Cir.1977); *Nagler v. Admiral Corp.,* 248 F.2d 319 (2d Cir.1957). In fact, the United States Supreme Court has mandated that in antitrust cases, where "proof is largely in the hands of the alleged conspirators, dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Hospital Bldg. Co. v. Trustees of Rex Hosp.,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976).

## B. Sherman Act Section 1 Claim

■ Count I of Delaware Health's complaint asserts a claim against all defendants for "Combination and Conspiracy in Restraint of Trade and to Monopolize." D.I. 1 at 10. Plaintiff avers that the defendants "have engaged in an unlawful conspiracy to unreasonably restrain and monopolize the market for home health care services, particularly the market for home infusion products and services, in violation of Section 1 of the Sherman Act, 15 U.S.C. Section 1." *Id.* at ¶ 35. Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade, or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1.

In *Fuentes v. South Hills Cardiology,* 946 F.2d 196 (3d Cir.1991), a group boycott case, the Third Circuit Court of Appeals outlined the elements a plaintiff must allege to withstand a motion to dismiss under section 1 of the Sherman Act: (1) a contract, combination, or conspiracy by the defendants; (2) a restraint of trade; and (3) an effect on interstate commerce. *Id.* at 198. In their motion to dismiss, defendants argue that the complaint fails to allege the requisite concerted action necessary for a section 1 claim. Defendants argue that MCD Holding, the Medical Center, and VNA are all wholly-owned

subsidiaries of MCD Foundation, and as such, comprise a single enterprise and are legally incapable of conspiring with each other for Sherman Act section 1 purposes. D.I. 16 at p. 11 (citing *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 769, 104 S.Ct. 2731, 2741, 81 L.Ed.2d 628 (1984) (parent corporation and wholly-owned subsidiary could not engage in concerted action in violation of section 1 as a matter of law)); *see also Fineman v. Armstrong World Indus., Inc.,* 980 F.2d 171, 205 (3d Cir.1992) (same), *cert. denied,* —— U.S. ——, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993).

In the context of a Rule 12(b)(6) motion to dismiss, the Court must limit its consideration to the well-pleaded facts alleged by plaintiff in its complaint, *Biesenbach v. Guenther,* 588 F.2d 400, 402 (3d Cir.1978), and accept them as true, *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). Plaintiffs have not alleged the corporate relationship, if any, of defendant MCD Holding to the other defendants; the complaint sets forth no factual basis for finding that MCD Holding is a wholly-owned subsidiary of MCD Foundation. At this embryonic stage of the proceedings, viewing the allegations in the light most favorable to the plaintiff, there is no lack of the required concerted action under section 1 of the Sherman Act as between MCD Holding and the remainder of the MCD Foundation-owned defendants.

■ Under the standard enunciated in *Fuentes,* plaintiff must plead the facts constituting the conspiracy, its object and accomplishment. *Fuentes,* 946 F.2d at 202. Plaintiff must also adequately plead sufficient facts as to defendants' alleged restraint of trade. *Id.* In its complaint, plaintiff alleges that the Medical Center caused a vertical restraint of trade via its boycotting practices and coercion of physicians to refer hospital patients to only MCD Foundation-owned home health ventures. D.I. 1 at ¶ 36(a)-(b). Furthermore, plaintiff alleges horizontal restraint of trade caused by MCD Holding "almost exclusively" referring its skilled nursing business to VNA, and VNA reciprocating by "referring almost exclusively" to MCD Holding all its infusion referrals. *Id.*

at ¶ 36(c). Finally, plaintiff avers that the defendant hospitals set out to destroy plaintiff's business. *Id.* at ¶ 36(a). These allegations identify the requisite participants, purpose, and accomplishment of the alleged conspiracy. *See Fuentes,* 946 F.2d at 202 (allegation identifying the conspiracy's participants, purpose and motive sufficient to survive a motion to dismiss). In addition, if accepted as true, these allegations could constitute exclusionary practices in an unlawful restraint of trade. *Fuentes,* 946 F.2d at 202.

■ Plaintiff avers sufficient effect on interstate commerce, the third prong under *Fuentes,* by alleging purchase by all litigants of significant amounts of medical supplies and pharmaceuticals from out-of-state suppliers, employment of non-Delaware residents, and reimbursement from both public and private sector carriers located in states other than Delaware. D.I. 1 at ¶ 5. *See Fuentes,* 946 F.2d 196, 200–01 (allegations of specific quantum of interstate commerce not necessary to pass pleading muster). Thus, plaintiff has satisfied its pleading burden to withstand defendants' motion to dismiss the section 1 Sherman Act claim.

## C. Sherman Act Section 2 claims

■ Count II of the complaint sets forth a Sherman Act section 2 claim for "Attempted Monopolization, Monopolization, and Predatory Conduct." D.I. 1 at 11. Plaintiff pleads that defendants have either achieved an unlawful monopoly in the health care market, or at least have attempted to do so. Plaintiff alleges that defendants have attempted to monopolize and have monopolized home health care through the following anti-competitive conduct: denial of essential facility, leveraging, and vertical integration. D.I. 1 at ¶ 38.

■ Section 2 of the Sherman Act punishes "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States...." 15 U.S.C. § 2. The threshold requirements for establishing monopoly as opposed to attempted monopoly vary somewhat from each other. To state a section 2 monopolization claim,

plaintiff must allege "(1) possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident." *Fineman v. Armstrong World Indus., Inc.,* 980 F.2d 171, 197 (3d Cir.1992) (quoting *United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703, 16 L.Ed.2d 778 (1966), *cert. denied,* —— U.S. ——, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993)). To state a claim for attempted monopolization, plaintiff need allege "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports, Inc. v. McQuillan,* —— U.S. ——, ——–——, 113 S.Ct. 884, 890–91, 122 L.Ed.2d 247 (1993).

Plaintiff's complaint satisfies these threshold elements as to all three of its monopolization theories. Delaware Health alleges that the Medical Center and VNA defendants possess monopoly power in each of their respective industries which was willfully acquired and maintained in violation of section 2 of the Sherman Act. *Id.* at ¶ 38. The complaint specifically alleges that defendant hospitals possess monopoly power in the hospital market and are "the most important referral sources for the plaintiff." *Id.* at ¶ 38(a), (b). The complaint further alleges that the hospitals have "denied the plaintiff any access to home care patients already discharged, or about to be discharged." *Id.* Plaintiff also alleges that the defendants denied plaintiff access to records of these prospective home health patients, *id.,* and that defendants boycotted plaintiff and coerced physicians to refer patients almost exclusively to defendants' ventures at the expense of plaintiff and other competitors. *Id.* at ¶¶ 36, 38(b), 38(d). In light of the liberal pleading requirements under the Federal Rules of Civil Procedure, the Court finds that plaintiff has adequately set forth the requisite allegations of monopoly and willful acquisition or maintenance of that monopoly power.

■ Similarly, the complaint meets the minimal pleading burden with respect to the

attempted monopolization claim. Plaintiff claims that defendants steer discharged hospital patients into defendants' own home health ventures without offering the patients the choice to select other vendors. *Id.* at ¶ 38(b). When viewed in the light most favorable to plaintiff, a monopolist's exclusion of patients from competing home health providers militates toward a dangerous probability of success that the defendants could achieve monopoly power in the home health market. Along with its allegations that defendants engaged in predatory anticompetitive practices such as boycotts and physician coercion, plaintiff alleges that defendant MCD Foundation acquired the VNA in a "calculated scheme" to control the home health care market. *Id.* at ¶ 38(c). Finally, plaintiff characterizes defendants as advising plaintiff to "close its business because 'there is no room for another health care agency in the community.'" *Id.* at ¶ 38(c). Plaintiff's allegations, when taken together, do not allow for the conclusion that it is "beyond doubt" that plaintiff can prove no set of facts in support of its attempted monopolization claim.

### 1. Essential Facilities Doctrine

■ Defendants argue that the essential facilities doctrine is not applicable to the facts of this case. D.I. 16 at p. 20. This antitrust doctrine is implicated "where a monopolist controls a facility that its competitors need access to if they are to compete effectively." *Monarch Entertainment Bureau, Inc. v. New Jersey Highway Auth.,* 715 F.Supp. 1290, 1300 (D.N.J.), *aff'd,* 893 F.2d 1331 (3d Cir.1989). The doctrine had its genesis in the United States Supreme Court case of *United States v. Terminal R.R. Ass'n,* 224 U.S. 383, 32 S.Ct. 507, 56 L.Ed. 810 (1912). In that case, a small group of railroads acquired the two railroad bridges traversing the Mississippi River at St. Louis and a nearby ferry used to transport train cars. *Id.* at 391–94, 32 S.Ct. at 508–510. The Supreme Court acknowledged that the twenty four railway lines converging at St. Louis required access to these river crossings and ordered equal access to the crossings be made available to all users under reasonable terms. *Id.* at 411, 32 S.Ct. at 516.

Since *Terminal R.R. Ass'n,* firms controlling a facility under similar "bottlenecked" circumstances have been ordered to make the facility available to other users on non-discriminatory terms. *See e.g., MCI Communications Corp. v. American Tel. and Tel. Co.,* 708 F.2d 1081, 1133 (7th Cir.) (denial of telecommunications access to local distribution facilities involving "millions of miles of cable and line to individual homes and businesses"), *cert. denied,* 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983).

■ To establish liability under the essential facilities doctrine, a plaintiff must allege the following elements:

> (1) control of the essential facility by a monopolist; (2) the competitor's inability practically or reasonably to duplicate the essential facility; (3) denial of the use of the facility to a competitor; and (4) the feasibility of providing the facility.

*Monarch Entertainment Bureau, Inc. v. New Jersey Highway Auth.,* 715 F.Supp. 1290, 1300 (D.N.J.) (citations omitted), *aff'd,* 893 F.2d 1331 (3d Cir.1989); *see also Twin Lab., Inc. v. Weider Health & Fitness,* 900 F.2d 566, 569 (2d Cir.1990); *McKenzie v. Mercy Hosp.,* 854 F.2d 365, 369 (10th Cir. 1988); *Ferguson v. Greater Pocatello Chamber of Commerce,* 848 F.2d 976, 983 (9th Cir.1988); *MCI Communications Corp. v. American Tel. and Tel. Co.,* 708 F.2d 1081, 1133 (7th Cir.), *cert. denied,* 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983).

According to plaintiff's complaint, defendant Medical Center possesses monopoly power in the relevant hospital market and controls the referral stream of hospital inpatients. D.I. 1 at ¶ 38. Plaintiff also claims inability to practically or reasonably duplicate this process. *Id.* Finally, plaintiff alleges the Medical Center denied plaintiff access to hospital records, but allowed access to the defendant competitors. *Id.* Taken in a light most favorable to plaintiffs, these facts could support a claim on which plaintiff is entitled to relief.

Relying on numerous antitrust decisions involving denial of hospital privileges to physicians, defendants argue that "it is well settled ... that the essential facility doctrine is

*not* applicable to hospital decisions about professional services." D.I. 16 at 20. These cases have uniformly involved a hospital's refusal to allow a physician-plaintiff to practice at a given hospital or to be awarded service contracts with the hospital. *See, e.g., Castelli v. Meadville Medical Ctr.,* 702 F.Supp. 1201 (W.D.Pa.1988) (radiologist denied exclusive service contract with hospital), *aff'd,* 872 F.2d 411 (3d Cir.1989); *Pontius v. Children's Hosp.,* 552 F.Supp. 1352 (W.D.Pa. 1982) (hospital decision to not reappoint cardio-thoracic surgeon); *Robinson v. Magovern,* 521 F.Supp. 842 (W.D.Pa.1981) (rejection of thoracic surgeon's application for hospital staff privileges), *aff'd,* 688 F.2d 824 (3d Cir.), *cert. denied,* 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982).

Courts have consistently recognized that the keystone for a hospital's clinical operation is its medical staff, and that it would be singularly inappropriate "to prevent a hospital from keeping doctors it had adjudged incompetent or unqualified off of its staff." *Pontius v. Children's Hosp.,* 552 F.Supp. at 1370. These considerations, not present in the instant case, have foreclosed application of the essential facilities doctrine to hospital staff privileges decisions. Where hospitals refused to provide patient access to home health care or home medical equipment providers, courts have allowed plaintiff's complaints to withstand motions to dismiss under the essential facilities doctrine. *See Advanced Health–Care Serv., Inc. v. Radford Community Hosp.,* 910 F.2d 139, 150–51 (4th Cir.1990) (allegations of denial of access to discharged hospital patients for outpatient durable medical equipment referral are sufficient to state an essential facilities claim); *American Health Sys., Inc. v. Visiting Nurse Ass'n,* 1994 WL 314313 (E.D.Pa. June 29, 1994) (hospital defendants may be an essential facility for home health care provider). Consonant with this persuasive authority, this Court holds that plaintiff has stated the primal elements of an essential facilities claim.

## 2. Leveraging

 Defendants also argue that plaintiff's complaint is facially insufficient to support claims of monopolization and attempted monopolization claims under a leveraging theory. D.I. 16 at 17. Leveraging involves the exertion of monopoly power in one market to gain a second monopoly in a related market. *Advo, Inc. v. Philadelphia Newspapers, Inc.,* 51 F.3d 1191, 1202 (3d Cir.1995) [2]; *Fineman v. Armstrong World Indus., Inc.,* 980 F.2d 171, 197–98, 206 (3d Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993). Defendants argue that the complaint does not allege that the hospital defendants possess upstream monopoly power in the hospital market; the absence of such an allegation would be fatal to plaintiff's claim of leveraging. *See American Health Sys., Inc. v. Visiting Nurse Ass'n,* 1994 WL 314313 (E.D.Pa. June 29, 1994).

Contrary to defendants' assertions, plaintiff alleges the following:

> To the detriment of the Plaintiff and other competitors Defendant Foundation leveraged its monopoly power, in the hospital market, to extend its monopoly in the home health market through Defendant Hospitals. Patients who chose the Defendant Hospitals as their provider for inpatient care, were, upon discharge, steered into another venture of the Defendant Foundation, i.e., the VNA, without being given a choice.

D.I. 1 at ¶ 38(b). This pleading demonstrates an allegation that defendants possessed monopoly power in the hospital market by defendants. If taken as true, these facts could support a claim that defendants' monopoly in the hospital market could result in either actual monopolization or have the dangerous probability of monopolization of the relevant home health care service market under a leveraging theory.

---

**2.** The Court is well aware that the Third Circuit Court of Appeals has recently commented that while "leveraging arguments have long been a staple of antitrust suits, they have come under increasing attack as economically groundless." *Advo, Inc. v. Philadelphia Newspapers, Inc.,* 51 F.3d 1191, 1202 (3d Cir.1995). However, the *Advo* court did not repudiate the leveraging doctrine *in toto, id.* at 1203, and have allowed this theory under § 2 of the Sherman Act to remain viable, if not perhaps more narrowly circumscribed.

Defendants argue further that even if plaintiff has alleged possession of monopoly power in the upstream hospital market, plaintiff still has failed to allege the existence of a relevant geographic market. D.I. 16 at p. 18. Because this argument dovetails with an identical argument regarding the entirety of plaintiff's antitrust claims, the Court will address this issue in the broader spectrum.

## D. Relevant Geographic Market

 In addition to its Sherman Act claims, plaintiff has brought a claim under section 7 of the Clayton Act, 15 U.S.C. § 18.[3] Defendants correctly argue that to prove its antitrust claims, plaintiff must define the relevant product and geographic markets in which the alleged anticompetitive conduct takes place. *Pastore v. Bell Tel. Co. of Pennsylvania,* 24 F.3d 508, 512 (3d Cir.1994) (section 2 Sherman Act claim); *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.,* 998 F.2d 1224, 1229 (3d Cir.) (section 1 Sherman Act claim), *cert. denied,* —— U.S. ——, 114 S.Ct. 554, 126 L.Ed.2d 455 (1993); *United States v. Marine Bancorporation,* 418 U.S. 602, 618, 94 S.Ct. 2856, 2868, 41 L.Ed.2d 978 (1974) (section 7 Clayton Act claim).

 The relevant geographic market in an antitrust case consists of the geographic area in which defendants effectively compete "with other businesses for distribution of the relevant product." *Borough of Lansdale v. Philadelphia Elec. Co.,* 692 F.2d 307 (3d Cir.1982). The relevant geographic market is not defined in terms of the locale where the seller attempts to sell its product or service, but rather is defined as the area where customers would look to buy such a product or service. *Tunis Bros. Co. v. Ford Motor Co.,* 952 F.2d 715, 726 (3d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 21 (1992).

 The size of a geographic market is impacted by many factors specific to a given industry and must be determined within the context of the commercial realities of each case. *Borough of Lansdale v. Philadelphia Elec. Co.,* 692 F.2d at 311. Courts have recognized the existence of market imperfections unique to the health care industry: "the prevalence of third-party payment for health care costs reduces price competition, and a lack of adequate information renders consumers unable to evaluate the quality of the medical care provided by competing hospitals." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 27, 104 S.Ct. 1551, 1566, 80 L.Ed.2d 2 (1984). Services derived from or related to hospital stays, such as home health care, may demonstrate similar market imperfections. There is also evidence that patients

---

3. The Court reads Count III of the complaint as applying to the merger between defendant MCD Foundation and defendant VNA. The parties have not raised the issue of whether § 7 of the Clayton Act applies to these non-profit defendant corporations. Section 7 provides in relevant part:

 No person engaged in commerce or in any activity affecting commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no person subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another person engaged also in commerce or in any activity affecting commerce, where in any line of commerce or in any activity affecting commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly.

 No person shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no person subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of one or more persons engaged in commerce or in any activity affecting commerce, where in any line of commerce or in any activity affecting commerce in any section of the country, the effect of such acquisition, of such stocks or assets, or of the use of such stock by the voting or granting of proxies or otherwise, may be substantially to lessen competition, or to tend to create a monopoly.

15 U.S.C. § 18. The statute's reference to the "jurisdiction of the Federal Trade Commission" has seeded controversy over the propriety of the application of this statute to not-for-profit corporations. *See, e.g.,* David L. Glazer, *Clayton Act Scrutiny of Nonprofit Hospital Mergers: the Wrong Rx for Ailing Institutions,* 66 Wash.L.Rev. 1041 (October 1991) (collecting cases). *Cf.* 15 U.S.C. § 44 (FTC Act definition of corporation limited to those "organized to carry on business for its own profit or that of its members"). As the parties have neither raised nor briefed this issue, the Court expresses no opinion at this time as to whether, under the facts of this case, § 7 should apply. In all probability, this issue may resurface if and when the defendants move for summary judgment.

tend to choose hospitals and, therefore, hospital-related services, by location rather than price or quality. *Konik v. Champlain Valley Physicians Hosp. Med. Ctr.*, 561 F.Supp. 700, 714 n. 15 (N.D.N.Y.1983), *aff'd*, 733 F.2d 1007 (2d Cir.1984).

■ Defendants argue that plaintiff has not alleged the existence of a relevant geographic market and that this omission is fatal to the complaint's resilience to the 12(b)(6) motion. The complaint alleges the following:

> Located in the north of the State of Delaware, New Castle County is the most populous county in Delaware with a total population of 441,946 out of which, approximately, 50,332 are senior citizens, the most frequent users of home health services. Also, there are approximately 21,247 non-institutionalized persons in this County with a mobility or self care limitation, a group often in need of home health care.
> New Castle County borders with the Commonwealth of Pennsylvania on one side, and the State of Maryland on the other side. The County and its fringes are economically the most significant in the neighboring areas with a per capital income of $17,422, and the employment of about 18,534 county residents in the healthcare industry.

D.I. 1 at ¶ 29–30.

■ Defendants contend that these bare allegations amount to, at best, a description of plaintiff's service area as opposed to the relevant geographic market. They also argue that "there is no basis for inferring that a service area constitutes a geographic market unless the Plaintiff offers evidence of elasticity of demand and barriers to entry." D.I. 16 at pp. 16–17 (quoting *Home Health Specialists, Inc. v. Liberty Health Sys.*, 1994 WL 463406 *2 (E.D.Pa. Aug. 24, 1994). As authority, defendants cite several cases where antitrust actions were dismissed at summary judgment for lack of proof of the relevant geographic market. *See id.; Miller v. Indiana Hosp.*, 814 F.Supp. 1254 (W.D.Pa.), *aff'd*, 975 F.2d 1550 (3d Cir.1992) (service area insufficient at summary judgment to establish relevant geographic market), *cert. denied*, —— U.S. ——, 113 S.Ct. 1366, 122 L.Ed.2d 744 (1993); *Drs. Steuer*

*and Latham v. National Med. Enter.*, 672 F.Supp. 1489 (D.S.C.1987), *aff'd*, 846 F.2d 70 (4th Cir.1988) (same). However, for purposes of the present motion, plaintiff need not prove the merits of its case; only if it is beyond doubt that plaintiff can prove no set of facts to support its claims should defendants prevail. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

Plaintiff argues that defendants have overlooked other allegations in the complaint that identify the above pleadings as intended to show New Castle County as a geographic market. In paragraph 33, plaintiff alleges that defendants aimed to stifle competition so as to "gain from the market power they enjoyed over the downstream home health industry of the New Castle County area." D.I. 1 at ¶ 33. The complaint later alleges defendants as conspiring "to restrain all home care and infusion services in New Castle County." *Id.* at ¶ 36. The complaint also alleges that defendants set out to "broaden its monopolization and gain control of the health care market in the New Castle County area." *Id.* at ¶ 40.

Here, in its description of New Castle County and its population demographics, plaintiff may or may not have alleged accurate parameters of a relevant geographic market. Discovery may reveal that New Castle County is merely plaintiff's service area, as defendants contend. But given the idiosyncracies of the hospital and hospital-related markets as outlined above, the Court is not prepared to resolve these disputed factual issues on a motion to dismiss.

### E. Antitrust Harm to Competition

■ Defendants also argue that all of the antitrust counts should be dismissed for failure to allege "antitrust injury and harm to competition," D.I. 16 at 21, and that plaintiff has merely alleged injury to itself, *id.* at 23. To prove its antitrust claims, plaintiff must prove *antitrust* injury, that is, injury that reflects the anticompetitive effect of the antitrust violation or the anticompetitive acts made possible by the violation. *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S.

477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). To show antitrust injury, plaintiff must show both harm of the type the antitrust laws were intended to prevent and an injury to the plaintiff which flows from that which makes defendant's acts unlawful. *Gulfstream III Assoc., Inc. v. Gulfstream Aerospace Corp.,* 995 F.2d 425, 429 (3d Cir. 1993); *International Raw Materials, Ltd. v. Stauffer Chem. Co.,* 978 F.2d 1318, 1328 (3d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1588, 123 L.Ed.2d 154 (1993). "It is axiomatic that the antitrust laws were enacted for the protection of *competition,* not *competitors.*" *Tunis Bros. Co. v. Ford Motor Co.,* 952 F.2d 715, 727 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 3034, 120 L.Ed.2d 903 (1992); *see also Town Sound and Custom Tops, Inc. v. Chrysler Motors Corp.,* 959 F.2d 468, 486 (3d Cir.) (in banc) (antitrust plaintiff must "come up with evidence of injury to competition, not simply to the plaintiff[ ]"), *cert. denied,* —— U.S. ——, 113 S.Ct. 196, 121 L.Ed.2d 139 (1992).

The complaint does allege that plaintiff's existence as a viable commercial entity has been threatened because of defendants' conduct and that plaintiff has suffered increased costs, loss of employees, and loss of profits. D.I. 1 at ¶ 52. However, the complaint also alleges that defendants are engaged in a horizontal restraint that has effectively "eliminated the Plaintiff and other competition from the market," D.I. 1 at ¶ 36(c), and that defendants have restrained "all home care and infusion services in New Castle County," *id.* at ¶ 36(d). Plaintiff alleges that defendants have monopolized home care, and "in a calculated scheme to control its home health market, acquired the VNA, and now uses its power in the hospital market to destroy all competition in the home health market...." *Id.* at ¶ 36(c). Another passage alleges that "[s]uch anticompetitive exclusion has injured the Plaintiff and other competitors, and will continue to do so unless enjoined."

The above-quoted passages demonstrate to the Court's satisfaction that plaintiff has satisfied its minimal burden of pleading harm not only to itself, but also to others in the competitive landscape and thus to competition.

## F. State Law Claim for Tortious Interference

 Defendants challenge to plaintiff's state law claim for tortious interference with contractual and prospective contractual relations is conditioned on the Court's dismissal of the federal counts and discretionary rejection of supplemental jurisdiction under 28 U.S.C. § 1367(c)(3). Because the Court denies defendants' motion to dismiss these claims, it will exercise supplemental jurisdiction over the related state law claims at this time. 28 U.S.C. § 1367(a).

## G. Motion to Strike as Immaterial, Impertinent, and Scandalous

 As an alternative to their motion to dismiss under Fed.R.Civ.P. 12(b)(6), defendants have also moved under rule 12(f) to strike as immaterial, impertinent, and scandalous two of plaintiff's allegations involving defendants' tax-exempt or not-for-profit status. D.I. 15 at pp. 1–2. In paragraph 5 of its prayer for relief, plaintiff petitions the Court to examine defendants' "federal and state tax-exempt status due to its [sic] abuse in the restraint of trade." D.I. 1 at p. 18, ¶ 5. Plaintiff also alleges in its section 1 conspiracy count that "[o]ne of the two principal shareholders of Defendant Holding, a for-profit corporation, is also a member of the Board of Directors of Defendant VNA, a purported non-profit. Defendants VNA and Holding conspire to restrain all home care and infusion services in New Castle County." *Id.* at ¶ 36(d).

 The Federal Rules of Civil Procedure provide that "the court may order stricken from a pleading any ... redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). The function of a 12(f) motion to strike is to avoid expenditure of time and money that necessarily arises from litigating spurious issues by disposing of those issues prior to trial. *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2992, 125 L.Ed.2d 687 (1993). "Immaterial matter is that which has no essential or important

relationship to the claim for relief or the defenses being pleaded." 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706–07 (2d ed. 1990). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* at 711. Scandalous allegations may be stricken if the matter alleged "bears no possible relation to the controversy or may cause the objecting party prejudice." *Talbot v. Robert Matthews Distrib. Co.,* 961 F.2d 654, 664 (7th Cir.1992).

 When faced with allegations that could possibly serve to achieve a better understanding of plaintiff's claims or perform any useful purpose in promoting the just disposition of the litigation, courts generally deny such motions to strike. 5A Wright & Miller at § 1382, at 695–96. Here, plaintiff alleges in its conspiracy claim that a principal shareholder of one defendant, a for-profit entity, is a member of the Board of Directors of another defendant, a not-for-profit entity. D.I. 1 at ¶ 36(d). If this paragraph simply alleged these defendants' profit status, and nothing more, the relevance of this information would be subject to question. However, in the persona of this unnamed individual, plaintiff has set forth a colorable nexus between these two entities which would be relevant to plaintiff's claim of conspiracy.

Plaintiff has not countered its opponents' argument for striking the prayer for examination of defendants' tax-exempt status and has proffered no authority for the basis or relevance of such a petition in the context of an antitrust suit. The Court is unaware of precedent countenancing such a request in these circumstances and deems this allegation as bearing no important relationship or essentiality to the matters at hand. The Court will therefore strike paragraph 5 of the complaint's prayer for relief.

## IV. CONCLUSION

As set out above, plaintiff has succeeded in meeting its burden of pleading in this action sufficiently to withstand defendants' arguments to dismiss. Having considered plaintiff's complaint and defendants' motion to dismiss, the Court will deny the motion as to all counts of the complaint. However, the Court will grant defendants' motion to strike in part and will order paragraph 5 of the complaint's prayer for relief to be stricken.