Lester **SEASONGOOD**, Appellant,

v.

**K & K INSURANCE AGENCY** et al., Appellees.

No. 76–1194.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1976.

Decided Jan. 6, 1977.

Edward G. Farmer, Jr., St. Louis, Mo., for appellant; Jim J. Shoemake, St. Louis, Mo., on the brief.

John F. Rudy, II, Tampa, Fla., and Richard M. Stout, Kirkwood, Mo., filed brief for K & K Ins. Agency.

William I. Rutherford, St. Louis, Mo., for Foremost Ins. Co.; Elihu M. Hyndman and William E. Buckley, St. Louis, Mo., filed brief.

Edwin S. Taylor, St. Louis, Mo., for Sports Car Club of America; Veryl L. Riddle and John J. Hennelly, Jr., St. Louis, Mo., filed brief.

Before VAN OOSTERHOUT, Senior Circuit Judge, and HEANEY and HENLEY, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

This case raises substantial questions concerning the exemption from the federal antitrust laws provided to the business of insurance by the McCarran-Ferguson Act, as amended, 15 U.S.C. §§ 1011–1015. The district court, for reasons stated in its memorandum opinion, 414 F.Supp. 698 (E.D.Mo. 1976), granted defendants' motion to dismiss plaintiff's complaint with prejudice for failure to state a claim upon which relief could be granted.[1] We reverse.

The factual allegations of plaintiff's complaint, which for purposes of reviewing the propriety of the dismissal we assume to be true, are relatively simple. Plaintiff Lester Seasongood, a licensed insurance agent and broker, had for a period of eighteen years provided a master plan of insurance for defendant Sports Car Club of America (SCCA), a corporation organized to promote and sanction sports car races and other events. SCCA is affiliated with ninety-nine regional sports car clubs across the country, each of which is a separate corporation and each of which sponsors the various sports car events within its respective region. For each event the regional affiliate is issued a "sanction" by SCCA, and no event is "authentic" unless sanctioned by SCCA. One requirement for an SCCA sanction is the purchase by the regional affiliate of insurance coverage approved by SCCA.

Prior to February 1975 plaintiff, under the master plan he had developed with SCCA, provided substantial coverage for the regional affiliates and in connection therewith collected in excess of $750,000 in premiums annually. In February 1975, however, SCCA and defendant K & K Insurance Agency (K & K) entered into an "exclusive contract" by which SCCA in effect switched its master plan from plaintiff to K & K. SCCA has since "coerced" its regional affiliates into procuring insurance through K & K by "impliedly or implicitly" threatening to withhold or withdraw its sanction if the policies are not so procured. As a result, K & K has recently provided over ninety-five per cent of the coverage for sanctioned sports car events. K & K has placed such insurance with defendant Foremost Insurance Company (Foremost), which has designated K & K as its exclusive agent for such business and which was itself an active participant in the alleged combination and conspiracy.

Moreover, the actions of SCCA, K & K and Foremost, and the actions of the regional affiliates (which were not named as

---

1. It is clear that the dismissal was for failure to state a claim and not for lack of jurisdiction.

*Dexter v. Equitable Life Assur. Soc'y*, 527 F.2d 233, 236–37 (2d Cir. 1975).

defendants), were not prompted by independent business judgment, but were motivated by a desire to "restrain, hinder or eliminate" plaintiff from the business of writing sports car event coverage and thereby to eliminate plaintiff as a competitor.

Plaintiff claims that the conduct complained of is, in various respects, exclusive, coercive, monopolistic and otherwise anticompetitive, in violation of Sections 1 and 2 of the Sherman Act, as amended, 15 U.S.C. §§ 1 and 2, respectively.[2] He seeks treble damages and other relief pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, as well as injunctive relief.

Each of the defendants contended before the district court, and each of them contends here, that its actions are shielded from federal antitrust scrutiny by the McCarran-Ferguson Act. The controlling provisions of this Act are Sections 2(b) and 3(b), as amended, 15 U.S.C. §§ 1012(b) and 1013(b), respectively, which provide as follows:

> Section 2(b). No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided*, That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law.
>
> Section 3(b). Nothing contained in this chapter shall render the said Sherman Act inapplicable to any agreement to boycott, coerce, or intimidate, or act of boycott, coercion, or intimidation.

The district court held that Section 2(b) did apply and that Section 3(b) did not. It accordingly dismissed plaintiff's complaint with prejudice.

In an effort to escape the result reached by the district court, plaintiff advances three contentions, all of which concern the appropriate construction of Section 2(b) or 3(b) and the appropriate application of Section 2(b) or 3(b) to the facts at hand. These contentions are that the activities complained of (1) are not the "business of insurance" within the meaning of Section 2(b); (2) are not "regulated by State law" within the meaning of Section 2(b); and (3) constitute "act[s] of boycott, coercion, or intimidation" within the meaning of Section 3(b).

We hold that the complaint does not conclusively demonstrate that the activities complained of are regulated by state law within the meaning of Section 2(b) and that it was for this reason improperly dismissed. We do not reach the other issues raised.

### I.

■ We are met at the outset with a procedural objection. At least one of the defendants contends that plaintiff is precluded from arguing in this court that the activities complained of are not regulated by state law because plaintiff did not present that issue to the district court. Although we can hardly commend plaintiff for his belated pursuit of this issue, neither can we accede to defendants' contention. It was defendants' burden to establish the availability of the McCarran-Ferguson exemption, and defendants chose the procedural device of a motion to dismiss. In thus moving to dismiss, defendants not only assumed a heavy burden, but they also necessarily placed in issue themselves each component of the exemption. Thus, however perfunctory the district court's resolution of this issue may have been, and notwithstanding plaintiff's failure to bring this issue

---

**2.** Plaintiff's complaint also asserted a pendent claim under Missouri's Unfair Practices and Frauds Act. The district court dismissed this claim on the ground that the Missouri statute afforded no private right of action. 414 F.Supp. at 702–03. Plaintiff has not sought appellate review of this ruling. Our consideration of this appeal is accordingly confined to the district court's dismissal of the federal antitrust claims.

fully to light before that court, the issue was properly before the district court and is properly before us.[3]

We reiterate familiar principles governing motions to dismiss, both for the purpose of explaining why we reject defendants' procedural contention and for the purpose of reviewing generally the manner in which we view the complaint in the instant case. These principles were exhaustively set forth in *Great Atlantic & Pacific Tea Company v. Amalgamated Meat Cutters*, 410 F.2d 650, 652–53 (8th Cir. 1969). We said:

> [T]he Supreme Court has held that "[i]n appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). . .

> It is established doctrine that a pleader is not required to set forth specific facts to support its general allegations, . . . and pleadings are to be construed liberally in favor of the pleader[.] . . . The philosophy and intent of the Federal Rules concerning pleadings is authoritatively explained by the Supreme Court in *Conley, supra*, at 47–48, 78 S.Ct. at 103:

> > "[A]ll the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly

the disputed facts and issues. Following the simple guide of Rule 8(f) that 'all pleadings shall be so construed as to do substantial justice,' we have no doubt that petitioners' complaint adequately sets forth a claim and gave the respondents fair notice of its basis. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."

> We note, too, that the courts are especially reluctant to dismiss a complaint for failure to state a claim in the rapidly developing antitrust area. . . .

(Citations omitted in part).

With these principles firmly in mind, we proceed to the merits of plaintiff's contention.

## II.

The judicial setting in which the McCarran-Ferguson Act was passed is a familiar one and was aptly summarized by the Fifth Circuit as follows:

> In 1869 the Supreme Court held that "[I]ssuing a policy of insurance is not a transaction of commerce." *Paul v. Virginia*, 75 U.S. (8 Wall.) 168, 183, 19 L.Ed. 357 (1869). After that decision it was widely assumed that congressional regulation of the insurance business was improper. But in 1944 the Supreme Court held that insurance transactions were subject to congressional regulation in general, and the strictures of the antitrust laws in particular. *United States v. South-Eastern Underwriters Ass'n*, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). Congress responded to the *South-Eastern Underwriters* decision with the McCarran-Ferguson Act. That Act "was

---

**3.** We would be more impressed with defendants' contention had this case proceeded to trial or even summary judgment. Rule 56(e), Fed.R.Civ.P., requires that a party opposing a motion for summary judgment "set forth specific facts showing that there is a genuine issue for trial." Whatever the effect of this provision might have been had this case proceeded to the summary judgment stage, it is sufficient for present purposes to note that there is no such requirement with respect to a motion to dismiss.

an attempt to turn back the clock, to assure that the activities of insurance companies in dealing with their policy holders would remain subject to state regulation." *Securities & Exch. Comm'n v. National Securities, Inc.*, 393 U.S. 453, 459, 89 S.Ct. 564, 568, 21 L.Ed.2d 668 (1969). Congress was particularly concerned lest federal antitrust laws interfere with the rate-making regulatory schemes of individual states. *Id.* at 458–459, 89 S.Ct. at 567–568.

*Meicler v. Aetna Cas. & Sur. Co.*, 506 F.2d 732, 733 (5th Cir. 1975). See H.R.Rep.No. 143, 79th Cong., 1st Sess. (1945).

■ Section 2(b) of the Act provides that the antitrust laws shall be applicable to the business of insurance "to the extent that such business is not regulated by State law." A substantial portion of plaintiff's position consists of argument that the business of insurance is not regulated by state law unless the regulation is "effective." This court has already rejected that interpretation of Section 2(b).

We recently stated:

The Sixth Circuit has held "[I]f a state has generally authorized or permitted certain standards of conduct, it is regulating the business of insurance under the McCarran Act." *Ohio AFL–CIO v. Insurance Rating Board*, 451 F.2d 1178, 1181 (6th Cir. 1971), *cert. denied*, 409 U.S. 917, 93 S.Ct. 215, 34 L.Ed.2d 180 (1972). We agree, and hold that if the state statute generally regulates the pricing schedules and conduct of the insurance companies, this suffices to exempt the insurance carriers so regulated from federal antitrust suits. *See Fleming v. Travelers Indemnity Co.*, 324 F.Supp. 1404, 1406 (D.Mass.1971).

The Missouri statutes present a comprehensive scheme for control of title insurance pricing. Plaintiff's basic complaint is that this state regulation has been ineffective. However, the McCarran Act exemption does not depend on the zeal and efficiency displayed by a state in enforcing its laws. Congress has provided that exemption whenever there exists a state statute or regulation capable of being enforced. *See Ohio AFL–CIO v. Insurance Rating Board, supra.* Once the existence of such regulatory authority has been ascertained, federal enforcement must yield to the state.

*Lawyers Title Co. v. St. Paul Title Ins. Co.*, 526 F.2d 795, 797 (8th Cir. 1975).

■ We additionally observe the holdings of other courts of appeals that a state may proscribe, permit or otherwise regulate insurance activities which, but for the McCarran-Ferguson Act, would violate the antitrust laws, and that the McCarran-Ferguson exemption will yet apply. *Dexter v. Equitable Life Assur. Soc'y*, 527 F.2d 233, 236 (2d Cir. 1975); *Crawford v. American Title Ins. Co.*, 518 F.2d 217, 218 (5th Cir. 1975); *Addrisi v. Equitable Life Assur. Soc'y*, 503 F.2d 725, 728 (9th Cir. 1974), *cert. denied*, 420 U.S. 929, 95 S.Ct. 1129, 43 L.Ed.2d 400 (1975); *Travelers Ins. Co. v. Blue Cross*, 481 F.2d 80, 83 n.10 (3d Cir.), *cert. denied*, 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550 (1973). We agree that "if the exemption is only to apply when state law squarely prohibits all acts which would, absent the exemption, violate the antitrust laws, the state regulation which the McCarran-Ferguson Act aims to foster . . . would be a nullity." *Dexter v. Equitable Life Assur. Soc'y, supra* at 236.

■ Along similar lines plaintiff suggests that the absence of any private remedy to him for an alleged violation of state law will prevent application of the McCarran-Ferguson Act.[4] This contention is unsound and in essence has already been answered. If a state can *permit* an insurance company to engage in practices otherwise violative of the antitrust laws and still displace federal law, surely it can proscribe such practices, provide an administrative means of enforcement and still displace federal law. Section 2(b) speaks only of "regulation", which administrative action surely is; it does not

4. *Compare American Family Life Assur. Co. v. Planned Mkt. Assoc., Inc.*, 389 F.Supp. 1141, 1147 (E.D.Va.1974), *with Transnational Ins. Co. v. Rosenlund*, 261 F.Supp. 12, 26 (D.Ore.1966).

speak of private legal relief. *See Crawford v. American Title Ins. Co., supra* at 218.

## III.

The insuperable obstacle to accepting the district court's conclusion that the activities here complained of are "regulated by state law" lies in what appears to be a rather unique aspect of this case. Private antitrust actions addressing this facet of the McCarran-Ferguson exemption have typically been characterized by a definite focus on a particular state's law. *See, e. g., Dexter v. Equitable Life Assur. Soc'y; Lawyers Title Co. v. St. Paul Title Ins. Co.; Crawford v. American Title Ins. Co.; Meicler v. Aetna Cas. & Sur. Co.; Addrisi v. Equitable Life Assur. Soc'y; Travelers Ins. Co. v. Blue Cross; Ohio AFL–CIO v. Insurance Rating Bd.;* all *supra.* In each of these cases, either the activities complained of were confined to a particular state, or the allegations of the complaint were so framed as to render a particular state's law uniquely pertinent.[5]

In contrast, plaintiff's complaint here can be read as alleging a combination or conspiracy of nationwide proportions and damages to plaintiff sustained as a result of activities which have their primary and intended effect in any or all of the fifty states. In short, we cannot say, solely on the basis of facts alleged in the complaint, which state's or states' regulation might trigger the McCarran-Ferguson exemption, let alone whether or not such regulation does trigger the McCarran-Ferguson exemption.

In bare essentials, the complaint charges that SCCA and its regional affiliates agreed, combined or conspired with K & K and Foremost in an effort to require that the regional affiliates procure racetrack insurance from Foremost and through K & K, that the fruition of this effort was a master plan of insurance to which SCCA and K & K were the signatory parties, and that SCCA used its sanction as a coercive lever or tying device to ensure that the regional affiliates procure the insurance pursuant to the plan, all of which has resulted in lessened competition for racetrack insurance and, in particular, the loss of a lucrative national market in such business for plaintiff.

Assuming the truth of allegations contained in the complaint, we are informed that SCCA is a Connecticut corporation with principal offices in Colorado. We are also informed that SCCA's ninety-nine regional affiliates span the entire country and that one such affiliate, the Sports Car Club of St. Louis, is a Missouri corporation transacting business in Missouri. Further, K & K is an Indiana corporation with principal offices in Indiana and is licensed by the Missouri Division of Insurance to do business in Missouri. Foremost is a Michigan corporation, the location of its principal offices is not specified in the complaint, and it is authorized to do business in Missouri. Plaintiff is a resident of St. Louis County, Missouri, and presumably, although the complaint does not so state, maintains an office in Missouri.

We are not informed, however, where the SCCA–K & K contract was executed, nor do we know where any other acts in furtherance of the alleged conspiracy might have occurred. We are equally unenlightened as to those states in which are located

---

**5.** In *Lawyers Title Co.*, defendant St. Paul Title Insurance Company was alleged to have sold title insurance in the St. Louis area at rates which were predatory in comparison with rates charged elsewhere in Missouri. In *Crawford*, nine title insurance companies and agents were charged with price-fixing and other antitrust violations in the Greater Birmingham, Alabama area. In *Meicler*, action was purportedly brought on behalf of all automobile insurance policyholders in Texas charging every insurance company licensed to do business in Texas with antitrust violations in the pricing of insurance. In *Blue Cross*, the relevant market for alleged antitrust violations was twenty-nine counties in Western Pennsylvania. And in *Ohio AFL–CIO*, an Ohio labor union and an Ohio-licensed automobile operator charged several defendants with a combination and conspiracy in the fixing of prices of automobile insurance premiums; the action was peculiarly concerned with insurance rates in Ohio.

*Dexter* and *Addrisi* are discussed *infra* in the text of this opinion, Part III(B).

the regional affiliates whose business plaintiff might have lost as a result of the alleged conspiracy.

## A.

Two Supreme Court decisions provide the guidelines of our analysis. In *Federal Trade Commission v. National Casualty Company*, 357 U.S. 560, 78 S.Ct. 1260, 2 L.Ed.2d 1540 (1958), the Court reviewed orders of the Federal Trade Commission prohibiting two insurance companies from carrying on allegedly deceptive advertising practices. The specific issue before the Court was whether the orders could, as they purported to do, proscribe activities within the boundaries of states that had their own statutes prohibiting deceptive practices as well as within states that did not. On the authority of the McCarran-Ferguson Act, the Court held they could not: "[T]he Act withdrew from the Federal Trade Commission the authority to regulate respondents' advertising practices in those States which are regulating those practices under their own laws." 357 U.S. at 563, 78 S.Ct. at 1261 (footnote omitted).

Soon after *National Casualty* was decided, its holding and implications were underscored and elaborated upon in a case arising in this circuit. In *Federal Trade Commission v. Travelers Health Association*, 362 U.S. 293, 80 S.Ct. 717, 4 L.Ed.2d 724 (1960), the Court once again considered an order of the Federal Trade Commission prohibiting the allegedly deceptive advertising practices of an insurance company, this time Travelers. Travelers was a Nebraska corporation, licensed only in Nebraska and Virginia, and, although it sold no policies through agents, it did transact business by mail from its Omaha offices with residents of every state. On the ostensible authority of *National Casualty*, this court, with Judge Vogel dissenting, had set aside the FTC order on the basis of a Nebraska statute regulating acts of its domiciliary insurance companies. 262 F.2d 241 (8th Cir. 1959). The Supreme Court, vacating the judgment of this court, held that the purported reach of the Nebraska statute beyond the boundaries of the State of Nebraska was not the kind of state regulation to which Congress intended federal law to yield:

> The question here is thus quite different from that presented in *National Casualty*. In this case the state regulation relied on to displace the federal law is not the protective legislation of the States whose citizens are the targets of the advertising practices in question. Rather, we are asked to hold that the McCarran-Ferguson Act operates to oust the Commission of jurisdiction by reason of a single State's attempted regulation of its domiciliary's extraterritorial activities. But we cannot believe that this kind of law of a single State takes from the residents of every other State the protection of the Federal Trade Commission Act. In our opinion the state regulation which Congress provided should operate to displace this federal law means regulation by the State in which the deception is practiced and has its impact.

> \* \* \* \* \* \*

> There was no indication [by Congress] of any thought that a State could regulate activities carried on beyond its own borders.

> \* \* \* \* \* \*

> [W]hen Congress provided that the Federal Trade Commission Act would be displaced to the extent that the insurance business was "regulated" by state law, it referred only to regulation by the State where the business activities have their operative force.

362 U.S. at 297–99, 300, 301–02, 80 S.Ct. at 720, 721, 722 (footnote omitted). On remand, we gave effect to the FTC order everywhere but in Nebraska and Virginia. 298 F.2d 820 (8th Cir. 1962).

The case presently before us, of course, differs from both *National Casualty* and *Travelers Health* in that both Supreme Court cases concerned the Federal Trade Commission Act, while this case concerns the Sherman Act. The McCarran-Ferguson

Act, however, treats the two laws identically, and the *National Casualty* and *Travelers Health* decisions accordingly apply here.[6]

### B.

Manifestly, application of the *National Casualty* and *Travelers Health* holdings to the vastly different factual setting here is not simple. For present purposes we pause only to consider the general approach mandated by the Supreme Court and to explain the general contours which must circumscribe the analysis here. The details of this analysis and its ultimate resolution must await further factual development in the district court.

■ In the first place, plaintiff's broadest contention, that interstate insurance activity cannot at all be regulated by state law within the meaning of McCarran-Ferguson, is categorically mistaken. *National Casualty* plainly involved the interstate, indeed nationwide, dissemination of allegedly deceptive advertising materials. Just as plainly, the Court held that the Federal Trade Commission was ousted of jurisdiction in those states which regulated such dissemination. Given the interstate character of the insurance industry generally, any other conclusion would be an emasculation of McCarran-Ferguson itself and a mockery of the declared intention of Congress in passing the Act. See the preamble to the McCarran-Ferguson Act, 15 U.S.C. § 1011; H.R.Rep.No.143, 79th Cong., 1st Sess. (1945); *Prudential Ins. Co. v. Benjamin*, 328 U.S. 408, 429–30, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946).[7]

At the same time, the bare allegations of the complaint do not permit our accepting defendants' contention that an examination of Missouri law will alone suffice. If plaintiff's complaint were confined to a claim of having lost business with the Sports Car Club of St. Louis, SCCA's regional affiliate in Missouri, there would be little difficulty in confining our attention to Missouri law. The situation would then be essentially parallel to those in *Dexter v. Equitable Life Assurance Society* and *Addrisi v. Equitable Life Assurance Society*, both *supra*, cases heavily relied upon by defendants.

In *Dexter* and *Addrisi*, individuals seeking to procure home loans in Connecticut and California, respectively, challenged Equitable's practice of requiring the purchase of insurance as a condition or "tie" to obtaining the loans. The courts held, *inter alia*, that the practice was regulated by Connecticut and California law, respectively, and that the complaints had been properly dismissed.

*Dexter* and *Addrisi* did not adjudicate whether the laws of states other than Connecticut and California regulated the challenged practice and thus did not adjudicate that the practice was removed from federal antitrust scrutiny in states other than Connecticut and California. Those questions were not before the respective courts. In *Dexter*, had Connecticut law not triggered the McCarran-Ferguson exemption, plaintiffs could have been afforded any relief to which they might have been entitled on the merits of their antitrust claims without a consideration of the effect of McCarran-Ferguson, or the legality of the challenged

---

6. We do not intimate that courts should not, in applying the standards set out in *National Casualty* and *Travelers Health*, take due account of the varying purposes of actions taken by the Federal Trade Commission on behalf of the general public and private antitrust actions. *See Steingart v. Equitable Life Assur. Soc'y*, 366 F.Supp. 790, 793 (S.D.N.Y.1973). We have no quarrel whatsoever with the result reached in *Steingart*, and we view its analysis as one which is both helpful and *normally* applicable in a private antitrust suit. If or to the extent it is read as suggesting that private antitrust suits will *invariably*, for McCarran-Ferguson pur-

poses, focus on a single state's law, however, the case presently before us illustrates why we cannot subscribe to such an inflexible rule.

7. One court, properly we think, phrased the effect of the *National Casualty* holding as follows:

[W]here an insurance company, acting nationwide in scope but on the local level, is controlled in those local activities by all of the states in which the activity is conducted, federal controls are inoperative.

*In re Aviation Ins. Indus.*, 183 F.Supp. 374, 378 (S.D.N.Y.1960).

practice, elsewhere than in Connecticut. Precisely the same can be said of *Addrisi*, except that the state involved was California. In short, although the challenged practice was interstate in character, the complaints in *Dexter* and *Addrisi* did not implicate the effects of that practice beyond the boundaries of Connecticut and California, respectively.

It is wholly unclear whether a similar statement can be made here. Plaintiff's complaint, read broadly, charges not only a loss of business with the Sports Car Club of St. Louis, but a loss of business with SCCA's regional affiliates across the country. Indeed, judged solely from the allegations of the complaint, plaintiff's action bears no unique relationship to the State of Missouri other than plaintiff's residence. And, although there is some appeal in seizing upon plaintiff's Missouri residence as a means of limiting our attention to Missouri law, we do not think, for reasons presently to be explained, that this can be done consistently with *Travelers Health*.

The *Travelers Health* decision speaks variously of the state or states "whose citizens are the targets of the . . . practices in question", the state or states "in which the deception is practiced and has its impact", and the state or states "where the business activities have their operative force." 362 U.S. at 297, 299, 301–02, 80 S.Ct. at 720, 721, 722. It specifically cautions against giving preemptive effect to a state's regulation of "activities carried on beyond its own borders." *Id.* at 300, 80 S.Ct. at 721.

Not all of the above fragments from *Travelers Health* carry precisely the same import, and the markedly different factual setting here renders attempts to apply these standards difficult. It would be foolhardy on our part, however, to attempt to apply these standards without the benefit of a developed factual record. It may ultimately prove, although the possibility appears extremely remote, that the activities here complained of are sufficiently centered in some state (not necessarily Missouri) that

giving plenary effect to that state's laws would not intrude unduly upon the prerogatives of other states. Much more likely, it appears, the district court will ultimately be faced with an examination of the laws of several or numerous states. We intimate no view, of course, on the final disposition of this aspect of the controversy.

We do explain, however, why the sole fact of plaintiff's Missouri residence cannot serve to confine the analysis to Missouri law. The complaint assuredly does not rule out the possibility that the entire alleged conspiracy was carried out elsewhere than in Missouri. Although plaintiff claims to be a victim of the alleged conspiracy, he apparently was not a party to any transaction in furtherance thereof, and his claim does not, accordingly, require any activity by defendants in Missouri. Moreover, except perhaps to the extent that the Sports Car Club of St. Louis or some other Missouri affiliate might have been involved or affected, the alleged conspiracy cannot be said to have had its *operative* force or primary impact in Missouri. Insofar as plaintiff is charging that competition for racetrack insurance has been restrained or eliminated in states other than Missouri, there is little basis under *Travelers Health* for requiring the Sherman Act to yield to any purported regulation by Missouri.

■ In substance, then, defendants ask us to give nationwide preemptive effect to Missouri law with respect to activities which may not have been carried out in Missouri and which may not have had their primary effect in Missouri, simply because a Missouri resident has, as a result of such activities, sustained a loss of business, presumably in Missouri. This we cannot do. Although a blind insistence that all aspects of an alleged conspiracy must converge in a given state before that state's laws could be given such preemptive effect would make nonsense of an already complicated area of the law, *Travelers Health* nonetheless makes clear that a state regulatory scheme operating essentially extraterritorially is not the kind of regulation contemplated by

McCarran-Ferguson. Accordingly, absent a tie to the State of Missouri more compelling than plaintiff's residence, the fact that Missouri did (or didn't) regulate the activities here complained of would not serve to remove those activities from (or to subject them to) Sherman Act scrutiny nationwide.

Defendants seek to avoid the result here reached by emphasizing that all defendants are "present" in Missouri. The simple answer to this contention is that Travelers in *Travelers Health* was present, even domiciled,[8] in Nebraska. Just as Travelers' presence in Nebraska did not warrant nationwide deference to the laws of Nebraska, defendants' presence in Missouri does not warrant nationwide deference to the laws of Missouri.[9]

■ We thus hold that the complaint before us alleges insufficient facts on which to base a conclusion that any state's or states' laws regulate, within the meaning of Section 2(b) of the McCarran-Ferguson Act, the activities alleged therein. We hold in particular that any purported regulation of these activities by the State of Missouri is not, solely in light of matters alleged in the complaint, the kind of regulation contemplated by Section 2(b) of the Act.[10] It follows that the district court erred in granting defendants' motion to dismiss.

We emphasize what we do not decide. We do not decide whether Missouri has in fact purported to regulate the activities complained of, as plaintiff claims it has not.

Nor do we decide whether Missouri could, solely on the basis of matters alleged in the complaint, constitutionally regulate the activities. *See Federal Trade Comm'n v. Travelers Health Ass'n, supra* at 302, 80 S.Ct. 717; *State Bd. of Ins. v. Todd Shipyards Corp.*, 370 U.S. 451, 82 S.Ct. 1380, 8 L.Ed. 2d 620 (1962). Our holding is confined to the matters stated in the preceding paragraph.

Finally, since the disposition we reach necessitates a remand to the district court for further factual development, we do not pass on the other alleged errors raised by plaintiff. These issues may be better reviewed following disposition on remand, as a developed record may well be helpful in resolving such issues.

The order appealed from is reversed. The cause is remanded to the district court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

8. In this respect Missouri's relationship to this action is even more tenuous than Nebraska's was in *Travelers Health*. Here, it appears that none of the defendants are domiciled in Missouri.

9. It is true that Travelers was not licensed in forty-eight states. Defendants, in arguing that this fact distinguishes *Travelers Health* from the facts at hand, misperceive the relevance of this fact to our decision on remand. When the *Travelers Health* decision came to us a second time, it had already been resolved (by the Supreme Court) that Nebraska law could not oust the FTC of jurisdiction elsewhere than in Nebraska. The question remaining was whether the laws of the other forty-nine states might yet oust the FTC of jurisdiction within their respective borders. It was in this connection alone that the fact Travelers was not licensed in forty-eight states became relevant. The conclusion thus remains that defendants' presence in Missouri affords no more basis for nationwide deference to Missouri law than did Travelers' presence in Nebraska afford a basis for nationwide deference to Nebraska law.

10. *See* and *cf. American Gen. Ins. Co. v. Federal Trade Comm'n*, 359 F.Supp. 887, 894–96 (S.D.Tex.1973), *affirmed on other grounds*, 496 F.2d 197 (5th Cir. 1974); *Hamilton Life Ins. Co. v. Republic Nat. Life Ins. Co.*, 291 F.Supp. 225, 232 (S.D.N.Y.1968), *affirmed on related grounds*, 408 F.2d 606 (2d Cir. 1969).