**Boyd L. RICHIE, et al, Plaintiffs,**

v.

**The AMERICAN COUNCIL ON GIFT ANNUITIES, et al, Defendants.**

**Civil Action No. 7:94–CV–128–X.**

United States District Court,
N.D. Texas,
Wichita Falls Division.

Sept. 30, 1996.

Lonny D. Morrison, Morrison & Shelton, Wichita Falls, TX, Ronald D Wells, Milner Lobel Goranson Sorrells Udashen & Wells, Dallas, TX, Scott Robert Jacobs, Akin Gump Strauss Hauer & Feld, Dallas, TX, Robert Elkin, Phillip N. Smith, Jr., Charles Watson Cunningham, McKool Smith, Dallas, TX, for Boyd L. Richie.

Glynn Purtle, Fillmore & Purtle, Wichita Falls, TX, Judy C. Norris, George C. Chapman, Gregory S. Huffman, William Mayer Katz, Jr, Thompson & Knight, Dallas, TX, for The American Council On Gift Annuities, Inc.

George C. Chapman, Gregory S. Huffman, Thompson & Knight, Dallas, TX, Walter Franklin Williams, David Wayne Prasifka, Lorance & Thompson, P.C., Houston, TX, Stephen Morris Briley, Banner Briley & White, Wichita Falls, TX, Richard T. McCarroll, Brown McCarroll & Oaks Hartline, Austin, TX, Walter Hiram Mizell, Brown McCar-

roll & Oaks Hartline, Dallas, TX, Walter F. Williams, III, Lorance & Thompson, P.C., Houston, TX, for The Lutheran Church–Missouri Synod.

Richard T. McCarroll, Brown, McCarroll & Oaks Hartline, Austin, TX, Walter Hiram Mizell, Brown, McCarroll & Oaks Hartline, Dallas, TX, Roy T. Sparkman, Sparkman & Davison, Wichita Falls, TX, for Lutheran Church Missouri Synod Texas District, Lutheran Foundation of Texas.

Walter Franklin Williams, David Wayne Prasifka, Lorance & Thompson, P.C., Houston, TX, Stephen Morris Briley, Banner Briley & White, Wichta Falls, TX, Walter F. Williams, Lorance & Thompson, P.C., Houston, TX, for Concordia Lutheran College.

Richard T. McCarroll, Brown, McCarroll & Oaks Hartline, Austin, TX, Walter Hiram Mizell, Brown, McCarroll & Oaks Hartline, Dallas, TX, Roy T Sparkman, Sparkman & Davison, Wichita Falls, TX, for Gerald Bryan Kieschnick, Glenn Pittsford, Carl A. Heckmann, Glenn O'Shonney.

Walter Franklin Williams, David Wayne Prasifka, Lorance & Thompson, P.C., Houston, TX, Stephen Morris Briley, Banner Briley & White, Wichita Falls, TX, for Fred A. Bleeke.

Rod Phelan, Baker & Botts, Dallas, TX, Richard G. Braman, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, MN, for Gray, Plant, Mooty, Mooty & Bennett.

Charles Murray Barnard, Law Office of Charles M Barnard, Wichita Falls, TX, Alexander Halpern, Caplan and Earnest L.L.C., Boulder, CO, for University of Colorado Foundation, Inc.

George Randle Earle, Biggers Beasley Earle & Hightower, Dallas, TX, Patrick Ray Cowlishaw, Robert M. Cohan, Kurt Allen Schwarz, Cohan Simpson Cowlishaw & Wulff, Dallas, TX, for amicus curiae, Salvation Army.

George Walter Bramblett, Jr., Noel M.B. Hensley, Kerry McHugh Breaux, Haynes & Boone, Dallas, TX, for Baptist Foundation of Texas.

Robert C. Walters, Russell Ray Yager, Scott Wayne Breedlove, Vinson & Elkins, Dallas, TX, Richard Thomas Sutherland, Law Office of Richard T. Sutherland, Wichita Falls, TX, for American Bible Society, The Moody Bible Institute of Chicago.

Robert Richard Roby, James Allen Harrison, Russell Hendrix Roden, Gwinn & Roby, Dallas, TX, James D. Jordan, Guenther & Jordan, Nashville, TN, for Southern Baptist Convention.

Mark W. Bayer, William G. Whitehill, Elaine A. Murphy, Gardere & Wynne, Dallas, TX, Robert J. Brookhiser, Jr., Howrey & Simon, Washington, D.C. for U.S.

Susan Abbott Schwartz, Robin Foret, Landau Omahana & Kopka, Dallas, TX, for General Conference Corporation of Seventh–Day Adventists, Loma Linda University.

John Hess McElhaney, Susan Louise Karamanian, Michael James Boydston, Locke Purnell Rain & Harrell, Dallas, TX, for Anderson University, Inc., Mount Holyoke College, Smith College, Vassar College, St. Olaf College.

William Gray Compton, Arter Hadden Johnson & Bromberg, Dallas, TX, Oldrich Foucek, III, Tallman, Hudders & Sorrentino, P.C., Allentown, PA, for Good Shepherd Home Foundation.

Geraldine M. Alexis, Kirby H. Lewis, Sidley & Austin, Chicago, IL, Van Jackson Hooker, Jay Vogelson, Stutzman & Bromberg, Dallas, TX, for Northwestern University.

Thomas D. Graber, Hutcheson & Grundy, Dallas, TX, Charles Imlay Appler, Bennett & Weston, Dallas, TX, for American Baptist Foundation, American Baptist Foreign Mission Society, Evangelical Lutheran Church In America.

James Donald Blume, Law Office of James D. Blume, Dallas, TX, Donald C. Clark, Jr., Clark & DeGrand, Chicago, IL, for United Church of Christ.

Judy C. Norris, George C. Chapman, Gregory S. Huffman, Thompson & Knight, Dallas, TX, for Planned Giving Services, Inc, Planned Giving Resouces, Prerau & Teitell.

Robert C. Walters, Vinson & Elkins, Dallas, TX, for American Leprosy Missions.

Patricia Jane Villareal, Chrysta Osborn Castaneda, Jones Day Reavis & Pogue, Dallas, TX, for Hay–Huggins Company, Inc.

John Hess McElhaney, Susan Louise Karamanian, Michael James Boydston, Locke Purnell Rain & Harrell, Dallas, TX, Roger E. Bloomfield, Law Office of Roger E. Bloomfield, Dayton, OH, for Wittenberg University.

George Walter Bramblett, Jr, Noel M.B. Hensley, Kerry McHugh Breaux, Haynes & Boone, Dallas, TX, for Baptist Foundation of Texas.

Robert Richard Roby, James Allen Harrison, Russell Hendrix Roden, Gwinn & Roby, Dallas, TX, for Southern Baptist Convention.

Patricia Jane Villareal, Chrysta Osborn Castaneda, Jones Day Reavis & Pogue, Dallas, TX, for Hay–Huggins Co., Inc.

James Donald Blume, Law Office of James D. Blume, Dallas, TX, Donald C. Clark, Jr., Clark & DeGrand, Chicago, IL, for United Church of Christ.

Rod Phelan, Baker & Botts, Dallas, TX, Richard G. Braman, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, MN, for Gray, Plant, Mooty, Mooty & Bennett.

## MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

Now before the Court are:

1) Plaintiff's February 13, 1996 Motion for Leave to File Fourth Amended Class Action Complaint;

2) Defendants' December 14, 1995 Motion to Dismiss;

3) Defendant's August 27, 1996 Renewed Motion for Relief;

4) Defendant Northwestern University's January 26, 1996 Motion for Summary Judgment [1];

---

1. The Court has also read and considered Defendant Northwestern University's separate Reply, filed January 26, 1996, on these issues and its separate Motion, in the alternative, for Summary

5) Defendant Lutheran Foundation of Texas's October 26, 1995 Motion to Reconsider the May 3, 1995 Order Granting Partial Summary Judgment; and

6) Defendant American Council on Gift Annuities's and Defendant Lutheran Church–Missouri Synod's November 22, 1995 Motion for Partial Summary Judgment on Texas Statutory Claims.

After having considered these motions and all responses, replies, and surreplies thereto, the motions are hereby **DENIED IN PART, GRANTED IN PART,** unless otherwise stated, as follows.

## I.

This case involves a claim that the American Council on Gift Annuities, its members, and various other charities in the United States have been involved in a mass price-fixing conspiracy setting the maximum rates of return with regard to charitable gift annuities. In essence, the plaintiffs claim that these entities collusively fix prices to restrain competition between the various sellers of charitable gift annuities.

On December 8, 1995, the Charitable Gift Annuity Antitrust Protection Act[2] and the Philanthropy Protection Act[3] were enacted. These new federal statutes retroactively changed, not "clarified," the laws upon which Plaintiff's federal claims were (and are) based.[4] On December 14, 1996, less than a

week after passage of these new amendments, Defendants collectively moved the Court to dismiss[5] Plaintiff's two federal claims, as set forth in Plaintiff's Third Amended Complaint, pursuant to Fed. R.Civ.P. 12(b)(1), 12(b)(6), and 12(c) in view of these new statutory exemptions, and to remand his supplemental state-law claims.

On February 13, 1995, Plaintiff moved the Court for leave to file his Fourth Amended Class Action Complaint which, *inter alia*, would abandon his federal claim under the Investment Company Act of 1940 and his Texas Free Enterprise and Antitrust Act claim, but which would retain his other federal claim under the Sherman Act and his allegations concerning Defendants' illegal sale of annuities and operation of trust businesses. Defendants' Response to that motion argued, in part, that Plaintiff should not be permitted to amend his Complaint because its filing would be futile since Plaintiff's Fourth Amended Class Action Complaint would still fail to state a claim upon which relief can be granted in light of the newly-enacted, retroactive antitrust exemption.[6] Since, however, Defendants have not established "beyond doubt that Plaintiff can prove no set of facts in support of his claim that would entitle him to relief," *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), i.e., since there still exists the possibility that Defendants will not be able to prove that they qualify for the new

---

Judgment, also filed on January 26, 1996. References herein to "Defendants' Motion to Dismiss" include and apply to Defendant Northwestern University's Motion for Summary Judgment since it is also predicated on the new antitrust exemption. Since Defendant Northwestern University's qualification for this exemption raises material fact issues and because of the conclusory nature of its supporting affidavits, its alternative Motion for Summary Judgment is **DENIED.** *See* Fed.R.Civ.P. 56 and 52(c).

**2.** Pub.L. No. 104–63, 109 Stat. 687 (WESTLAW US–PL 104–63, HR 2525, December 8, 1995, Slip Copy).

**3.** Pub.L. No. 104–62, 109 Stat. 682 (WESTLAW US–PL 104–62, HR 2519, December 8, 1995, Slip Copy). The Court need not address the applicability of the Philanthropy Protection Act since Plaintiff's Fourth Amended Complaint abandons its claim pursuant to the Investment Company Act of 1940.

**4.** If nothing else, this case has underscored in this judge's mind the wisdom of the founding fathers' decision to separate the powers of government into three distinct "branches," with one of those branches being an independent judiciary with life tenure to insulate judicial decisions from the pressures of political activity and public opinion. Despite all the obvious activity of lobbyists, public relations persons, and other assorted spin doctors, this case is not as simple and easy as many would like to believe.

**5.** Defendant Northwestern also moves, in the alternative, for summary judgment on these same legal issues pursuant to Fed.R.Civ.P. 56(c).

**6.** *See Avatar v. Exploration Inc. v. Chevron U.S.A., Inc.,* 933 F.2d 314, 321 (5th Cir.1991); *Pan–Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539, 546 (5th Cir.1980).

antitrust exemption, Defendants' Motion to Dismiss Plaintiff's Sherman Act claim pursuant to Rule 12(b)(6) must be denied. Consequently, Plaintiff's proposed amendment is not futile since his Fourth Amended Complaint alleges facts which could potentially state a claim, even given the new statutory exemption; therefore, his Motion for Leave to File Fourth Amended Class Action Complaint is granted in all respects.

## II.

Section 2(a) of the Charitable Gift Annuity Antitrust Relief Act ("Antitrust Relief Act"), which amends state and federal antitrust laws, provides as follows:

> (a) EXEMPT CONDUCT.—Except as provided in subsection (b)[7], it shall not be unlawful under any of the antitrust laws, or under a State law similar to any of the antitrust laws, for 2 or more persons described in section 501(c)(3) of the Internal Revenue Code of 1986 (26 U.S.C. 501(c)(3)) that are exempt from taxation under section 501(a) of such Code to use, or to agree to use, the same annuity rate for the purpose of issuing 1 or more charitable gift annuities.

The "antitrust laws" to which this provision refers are defined in § 3 of the Antitrust Relief Act, and § 4 of the Antitrust Relief Act makes this exemption retroactively applicable.

▮▮▮ As with any statutory question, the Court begins with the language of the statute. *Kellogg v. United States (In re West Texas Marketing Corp.)*, 54 F.3d 1194, 1200 (5th Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 523, 133 L.Ed.2d 430 (1995). In determining a statute's plain meaning, it is assumed that, absent any contrary definition, "Congress intends the words in its enactments to carry their ordinary, contemporary, common meaning." *Pioneer Investment Services v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 388, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993) (internal quotation marks omitted). As the Supreme Court has

stated: "There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982) (internal quotation marks omitted). Where the statutory language is clear, as it is here, "the inquiry should end." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

▮▮▮ Since Defendants maintain that "Congress used the language 'described in section 501(c)(3)' and 'exempt from taxation under section 501(a)' as a traditional shorthand reference to 501(c)(3) organizations— not as distinct factual elements of the exemption granted by the new legislation"[8], the plain meaning of this statute is called into question. However, only if the statutory language is ambiguous are courts to proceed beyond the language as written. *Ron Pair Enterprises, Inc.*, 489 U.S. at 241, 109 S.Ct. at 1030. Here, the literal language of the statutory text unambiguously specifies two requirements for the Act's antitrust exemption: (1) an entity described in 26 U.S.C. § 501(c)(3) that is tax exempt under § 501(a); and (2) use of, or agreement to use, the same annuity rates with another such organization. Defendants' contention that this first requirement simply means "having a 501(c)(3) determination letter" is not the statute's plain meaning, but merely their subjective twist on the text's plain language commonly understood meaning. If it were, it could have been easily included. The Court cannot conclude that Congress meant one thing while saying another. Because the language of the new exemption is unambiguous, "the sole function of the court is to enforce it according to its terms." *Ron Pair Enterprises, Inc.*, 489 U.S. at 241, 109 S.Ct. at 1030 (internal quotation marks omitted).

Although floor debate may indicate that the new legislation was clearly meant to dis-

---

**7.** Subsection (b) relates only to State statutes passed after the effective date of the Charitable Gift Annuity Antitrust Relief Act.

**8.** Defendants' Reply at page 3.

pose of this lawsuit [9] and the American public, if polled by Gallup or Harris, would probably resoundingly want to put the kibosh to this lawsuit, the Court resists the temptation to "read into" the statute what "everyone clearly intended." To do so would, in the Court's opinion, be to engage in the very sort of judicial activism that so many proponents of this legislation disdain. The Court cannot get from the legislative history what the language of the statute unambiguously denies. As the Fifth Circuit paraphrased Justice Oliver Wendell Holmes, "we do not inquire what Congress meant; we only ask what it said." *Guilzon v. C.I.R.*, 985 F.2d 819, 823 n. 11 (5th Cir.1993).

■ Furthermore, the Court must strictly construe this plain qualifying language in the § 2(a) exemption in the Antitrust Relief Act since exemptions from the antitrust laws must be construed narrowly. *E.g., Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 126, 102 S.Ct. 3002, 3007, 73 L.Ed.2d 647 (1982); *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 99 S.Ct. 1067, 59 L.Ed.2d 261 (1979). Antitrust exemptions must be applied in a way that minimizes the risk that unprotected activity will escape remedy, thereby jeopardizing national competition policy.[10] Thus, the Court cannot treat § 2(a)'s phrases—"described in section 501(c)(3)" and "exempt from taxation under section 501(a)"—as "mere shorthand references" used by Congress, as Defendants urge. Instead, the Court will follow the law as written, i.e., Plaintiff's Sherman Act claim is not subject to dismissal until Defendants have proven that they qualify for the § 2(a) exemption, the same way any other law would be applied. If a Defendant can prove that it meets the new test, the legislative intent is clear that the claim should, and will, be dismissed as to that entity.

To make that determination, however, the Court must first make the necessary subsidiary findings on the factual elements of the exemption, e.g., the Court must determine whether the statutory criteria described in

**9.** "[A]n ominous class action lawsuit in a Federal court in Texas has put American philanthropy in jeopardy. Specifically, this lawsuit disingenuously attempts to apply securities and antitrust laws meant to govern commercial enterprises to fundraising and money-management techniques of charities. This is an application of Federal law never contemplated by Congress." 141 Cong.Rec. S17828 (daily ed. November 29, 1995) (statement of Senator Pressler). Senator Pressler's message has been received and the Court is acutely aware that the new legislation was directed at this suit.

The Court is also not unaware of or unsympathetic to the realities of the adverse effects this lawsuit may have on legitimate charities that do much good. All lawsuits have a negative effect on all defendants. In fact, this Court has over 400 of them, and most if not all of those defendants want their cases heard so the negative effects of their lawsuits can be removed. Nevertheless, this Court may not do what it believes is "right," but must do what the law explicitly requires. And, even though the Court has no doubt as to what Congress wanted to accomplish, applying what they wrote to trigger the exemption, however, is slightly more problematic.

In February, when the Court indicated that a ruling on these issues would be forthcoming in April, the Court meant what it said. Unfortunately, soon afterward, the Court was deluged with motions in the record-breaking number of cases filed this year. This time-crunch was exacerbated by the Court's criminal docket (which takes precedence), Congress's recent penchant for federalizing traditional state crimes, the hours involved in calculating sentencing guidelines, not to mention the six year vacancy of a judgeship position in the Northern District of Texas. All things considered, this case has been given exceptional attention, contrary to what is implied in footnote one of Defendants' Renewed Motion for Relief, e.g., no motion, of the hundreds of motions filed in this case, has had to be reported on the Court's six month pending motion list despite the fact that this case is only two years old and approximately half of the Court's other cases are *older*. Defendants can rest assured in the fact that the Court has not sat around staring out the window in boredom waiting for the next filing in the *Richie* matter to come in. Nonetheless, the Court will continue its efforts in the future to see that this case gets tried as soon as possible.

**10.** *See Abbott Laboratories v. Portland Retail Druggists Ass'n, Inc.*, 425 U.S. 1, 11–12, 96 S.Ct. 1305, 1313–14, 47 L.Ed.2d 537 (1976) (antitrust laws are "to be construed liberally, and ... exceptions ... are to be construed strictly."); *Federal Maritime Comm'n v. Seatrain Line, Inc.*, 411 U.S. 726, 734–35, 93 S.Ct. 1773, 1779–80, 36 L.Ed.2d 620 (1973) (antitrust laws are "fundamental national policy"); *Chicago Professional Sports Ltd. Partnership v. National Basketball Ass'n*, 961 F.2d 667, 671 (7th Cir.1992).

501(c)(3) [11] are met for each Defendant. On this score, I.R.S. 501(c)(3) determination letters, which are administrative determinations based on information supplied by applicants for such letters, do not necessarily establish that a Defendant is a bona fide organization "described in section 501(c)(3)" and "exempt from taxation under section 501(a)," which in turn would qualify a Defendant to benefit from the new antitrust exemption. *See, e.g., Geisinger Health Plan v. C.I.R.*, 985 F.2d 1210, 1214 (3d Cir.1993); *Phi Delta Theta Fraternity v. C.I.R.*, 887 F.2d 1302, 1308 (6th Cir.1989); 16 C.F.R. § 3.82(b) (1995); 1 C.F.R. § 315.306 (1995). The new statute makes no reference at all to an I.R.S. 501(c)(3) determination letter but rather references provisions of the Internal Revenue Code. As such, Defendants bear the burden of proving that they are "described in section 501(c)(3)" and "exempt from taxation under section 501(a)" for the exemption to apply to them, *e.g., Seasongood v. K and K Ins. Agency*, 548 F.2d 729, 732 (8th Cir.1977): self-definition or self-declaration does not pass muster.

Even so, Plaintiff's Fourth Amended Complaint has alleged facts that, if proved, would defeat the new exemption, e.g., Plaintiff has alleged that the American Council on Gift Annuities ("Council"), if it has been determined to be a 501(c)(3) organization, obtained its 501(c)(3) status through material misrepresentations and omissions to the I.R.S. If true, which is how the Court is required to take allegations under a Rule 12(b)(6) motion, the Council would not be entitled to the new antitrust exemption. *Walker ·Process Equip. Inc. v. Food Mach. & Chem. Corp.*,

382 U.S. 172, 174–77, 86 S.Ct. 347, 348–50, 15 L.Ed.2d 247 (1965).

Additionally, if the Council proves not to be, exempt, any Defendant that conspired with the Council to fix the prices or rates of charitable gift annuities would also lose its exemption, even if it has satisfied the prerequisites of the new exception. *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 782–83, 113 S.Ct. 2891, 2902–03, 125 L.Ed.2d 612 (1993). The new exemption in this case has both status-based ("persons described in section 501(c)(3) and exempt from taxation under section 501(a)") *and* conduct-based ("use or agreeing to use the same annuity rate" for purposes of issuing charitable gift annuities) elements similar to the Capper–Volstead exemption, 7 U.S.C. § 291. Even if the Rule of Forfeiture did not apply (which it does), the new exemption certainly does not exempt or otherwise authorize conspiracies with nonexempt entities.

Consequently, to avoid needless expense and delay to all other Defendants, the Court will decide the Council's exempt status before determining other Defendants' statuses. Therefore, all discovery will remain abated except as to whether the Council is entitled to the new antitrust exemption. If during dispositive motion practice the Council proves not to be exempt, then class certification issues will be subsequently addressed.[12]

### III.

■ Defendants' contention that "this Court lacks jurisdiction to evaluate Defendants' 501(c)(3) status" is legally *incorrect*. (Reply at page 3) 26 U.S.C. § 7428 [13], the tax

---

**11.** Section 501(c)(3) provides for tax exempt status for: "corporations ... organized and operated exclusively for religious, charitable, ... or educational purposes ... no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation ..."

**12.** By Order entered this same day, the Court has decertified all previously certified classes in this case.

**13.** 26 U.S.C. § 7428 provides in pertinent part as follows:

In a case of actual controversy involving—

(1) a determination by the Secretary (A) with respect to the initial qualification or continuing qualification of an organization described in section 501(c)(3) which is exempt from tax under section 501(a) or as an organization described in section 170(c)(2), (B) with respect to the initial classification or continuing classification of an organization as a private foundation ..., or (C) with respect to the initial classification or continuing classification of an organization as a private operating foundation ..., or

(2) a failure by the Secretary to make a determination with respect to an issue referred to in paragraph (1),

..., the United States Tax Court, the United States Claims Court, or the district court of the

exception to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201 [14], does not "give exclusive jurisdiction over disputes involving an organization's 501(c)(3) status to the Tax Court, the Claims Court, and the D.C. district court" as Defendants' argue at page nine of their Reply, and this Court does not lack jurisdiction to "*de novo* review" or otherwise litigate an entity's 501(c)(3) status to determine Defendants' eligibility for this new antitrust exemption. Neither 26 U.S.C. § 7428 nor the DJA, 28 U.S.C. § 2201, are jurisdictional statutes. Section 7428 only involves pre-assessment, pre-collection claims for declaratory relief regarding tax liability and neither creates exclusive jurisdiction nor supplants district court jurisdiction over tax refund actions. *See e.g., American Ass'n of Christian Schools Voluntary Employees Beneficiary Ass'n Welfare Plan Trust v. United States*, 850 F.2d 1510 (11th Cir.1988) (district court found church insurance trust to not be a 501(c)(3) entity).

More to the point, neither § 7428 nor the DJA are implicated in this case. This is not an action to confer tax liability upon any of the defendants. In enacting § 7428, Congress did not limit jurisdiction to apply the Internal Revenue Code, but only limited jurisdiction to enter certain relief that would interfere with tax collection. This case merely involves a tax-status-related issue that does not implicate tax liability or the assessment and collection of taxes. Moreover, the dispute in this case that is connected with 501(c)(3) classification is to allow the Court to review 501(c)(3) statuses in order to make the subsidiary findings necessary to determine the applicability of the new antitrust exemption. Otherwise, all an antitrust defendant would need do is *allege* the exemption and thus deprive every district court in the country, save one, of antitrust jurisdiction. This clearly is not the law. Accordingly, this Court concludes that it is not divested of subject matter jurisdiction to determine whether the 501(c)(3) and 501(a) elements of Congress's new antitrust exemption are met. *See Stern & Co. v. State Loan & Fin. Corp.*, 205 F.Supp. 702 (D.Del.1962); *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965).

Although Defendants assert that *Youngblood v. FDIC*, 29 F.3d 225, 228–29 (5th Cir.1994), requires federal courts to defer to I.R.S. determination letters, that case is distinguishable in several important aspects from the instant case. The issue in *Youngblood* was whether the Texas legislature contemplated that its own courts would independently determine whether a retirement plan is "qualified" under the Internal Revenue Code, especially when the I.R.S. had made a contrary determination. The Fifth Circuit reasoned that the state legislature likely did not intend for conflicts to develop between state courts and the I.R.S. in such a complex, specialized area of federal law, noting state court inexperience with federal tax matters. *Youngblood* involved a bankruptcy court's application of a state statute that referred to federal law, not the interpretation of federal law by an Article III court, and did not address I.R.S. determination letters with respect to 501(c)(3) status.

## IV.

Defendant Lutheran Foundation of Texas's October 26, 1995 Motion to Reconsider the May 3, 1995 Order Granting Partial Summary Judgment, *Ozee v. American Council on Gift Annuities*, 888 F.Supp. 1318

United States for the District of Columbia may make a declaration with respect to such initial classification or continuing qualification or with respect to such initial classification or continuing classification. Any such declaration shall have the force and effect of a decision of the Tax Court or a final judgment or decree of the district court or the Claims Court, as the case may be, and shall be reviewable as such....

**14.** 28 U.S.C. § 2201(a) (the Declaratory Judgment Act) states as follows:

In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, ... any court of the United States, ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

(N.D.Tex.1995), is DENIED. Soon after the Court's May 3, 1995 Order, the Texas Legislature, on May 23, 1995 and June 16, 1995, "clarified" that the provisions in the Texas Insurance Code, Texas Deceptive Trade Practices Act, Texas Banking Code, and Texas Non–Profit Corporation Act that existed when this lawsuit was filed provided no basis for any of Plaintiff's Texas statutory claims. The Texas Legislature explicitly stated that it was *not* changing the laws undergirding the May 3, 1995 Order, but merely "clarifying" them. The Court considers the Texas Legislature's "clarifications" irrelevant.

■ Again, the Court is bound by what the Legislature said. As it stands, "clarifications" of pre-existing law (as the new state amendments refer to themselves) cannot serve as a basis for reconsideration of the Court's Order since they did not expressly state that they wanted to retroactively change pre-existing law. The Court presumes every word was used for a reason and that every word not chosen was excluded for a reason. Absent a clear and unambiguous expression that Texas statutes on which the Court's May 3, 1995 Order was based, are retroactively changed, these "clarifications" are meaningless.

■ Construction of prior law is the sole prerogative of the courts. *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, ——, 114 S.Ct. 1439, 1452, 128 L.Ed.2d 119 (1994); *Federal Crude Oil v. Yount–Lee Oil Co.*, 122 Tex. 21, 52 S.W.2d 56, 63 (1932); *Amplifone Corp. v. Cameron County*, 577 S.W.2d 567, 570 (Tex.Civ.App.—Corpus Christi 1979, no writ). The Court finds no cases which even remotely suggest that courts may or should abdicate their judicial responsibility to a lawmaking body. The Court also finds no cases which suggest that the judiciary is bound, when the Legislature declares that a prior law said "red," to give effect to a subsequent Legislature's "clarification" that the law should be construed to say "green," which is exactly the argument advanced by Defendants' Motion to Reconsider. Clearly, addition of such new specific exemptions from broad statutes does precisely that when they directly contradict the plain wording of the prior statutes, as

they do in this instance. Insofar as it makes a contrary interpretation, the Court considers any persuasive or non-controlling state law authority on this issue (of which the Court is only aware of two state trial court opinions) to be unpersuasive.

Accordingly, Defendant Lutheran Foundation of Texas's and Defendant Lutheran Church–Missouri Synod's October 26, 1995 Motion for Partial Summary Judgment seeking declarations contrary to the foregoing and Defendant American Council on Gift Annuities's and Defendant Lutheran Church–Missouri Synod's November 22, 1995 Motion for Partial Summary Judgment are **DENIED.**

\* \* \*

For these reasons, Defendants' Motion to Dismiss and Renewed Motion for Relief are **GRANTED** as to Plaintiff's Investment Company Act of 1940 claim and as to Plaintiff's Texas Free Enterprise and Antitrust Act claim; are **DENIED** as to Plaintiff's Sherman Act claim; and are **DENIED** as to Plaintiff's state-law claims.